UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KATHERINE PONTIUS EBEL,

              *Plaintiff*,

-against-

G/O MEDIA INC., ONION, INC., *and*
JAMES SPANFELLER, *individually*,

              *Defendants*.

**Case No. 20-CV-7483**

# MEMORANDOM OF LAW IN SUPPORT OF MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS

Julia Elmaleh-Sachs
Susan K. Crumilleer
Crumiller P.C.
16 Court St, Ste 2500
Brooklyn, NY 11241
(212) 390-8480
jes@crumiller.com
susan@crumiller.com
*Attorneys for Plaintiff*

1

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. 3

PRELIMINARY STATEMENT ........................................................................................... 5

STATEMENT OF FACTS .................................................................................................... 6

PROCEDURAL HISTORY ................................................................................................... 9

ARGUMENT ......................................................................................................................... 9

   I.  Defendants' Breach of Fiduciary Duty Claims Are Meritless ................................. 10

  II.  Breach of the Duty of Loyalty Requires Wrongdoing by the Employee That Causes the Employer Competitive Injury ................................................................ 11

 III.  Pontius' Receipt of Information From Her Boss Is Not A Breach of Duty of Loyalty or Duty of Care ............................................................................................ 13

 IV.  Defendants' Remaining Allegations Are Conclusory, Unsupported, and Insufficient To State A Claim As A Matter Of Law .................................................. 15

  V.  Defendants' Breach of Contract Claim Is Coextensive With Their Claims for Breach of Duty of Care and Loyalty .......................................................................... 16

CONCLUSION ...................................................................................................................... 16

# **TABLE OF AUTHORITIES**

**Case Law**

*Ashcroft v. Iqbal,*
  556 U.S. 662, 679 (2009) ...............................................................................................10, 15

*Balaj v. L&N Twins Place LLC (In re L&N Twins Place LLC)*,
  No. 20 Civ. 1858 (KMK), 2020 U.S. Dist. LEXIS 227952, at *8 (S.D.N.Y. Dec. 3, 2020) ....11

*Bell Atlantic v. Twombly*,
  550 U.S. 544, 555 (2007) ....................................................................................................10

*Cerciello v. Admiral Ins. Brokerage Corp.*,
  N.Y.S.2d 224, 226 (N.Y. Sup. 2011).. ................................................................................12

*Custom Imports, Inc. v. Hanmee Trading Co.*, Inc.,
  596 F. Supp. 1126, 1130 (S.D.N.Y. 1984). .........................................................................16

*Ez-Tixz, Inc. v. Hit-Tix*,
  969 F. Supp. 220, 225 (S.D.N.Y.1997). ..............................................................................16

*Farricker v. Penson Dev., Inc.*,
  07 Civ. 11191 (DAB), 2010 U.S. Dist. LEXIS 20918, at *6, *8
  (S.D.N.Y. Mar. 4, 2010)..............................................................................................13, 14

*First Mfg. Co. v. Young,*
  3 N.Y.S.3d 284*,* (N.Y. Sup. 2014) .......................................................................................12

*Grewal v. Cuneo*,
  No. 13 Civ. 6836 (RA), 2016 U.S. Dist. LEXIS 8349, at *23
  (S.D.N.Y. Jan. 25, 2016) ....................................................................................12, 13, 14

*Grika v. McGraw*,
  57 N.Y.S.3d 675*,* (N.Y. Sup. 2016) .....................................................................................12

*Leary v. Fawaz Al-Mubaraki*,
  No. 18 Civ. 0048 (LTS) (HBP), 2019 U.S. Dist. LEXIS 170117, at *12-13
  (S.D.N.Y. Sep. 30, 2019)....................................................................................12, 13, 14

*Levy v. Young Adult Inst., Inc.,*
  103 F. Supp. 3d 426, 440 (S.D.N.Y. 2015) .........................................................................12

*Margrabe v. Sexter & Warmflash, P.C.*,
  No. 07 Civ. 2798 (KMK) (GAY) 2009 U.S. Dist. LEXIS 11426, at *21
  (S.D.N.Y. Feb. 9, 2009)........................................................................................................11

*Phansalkar v. Andersen Weinroth & Co., L.P.*,
   344 F.3d 184, 200 (2d Cir. 2003) ..................................................................................... 11

*Stanley v. Skowron*,
   989 F. Supp. 2d 356, 360 (S.D.N.Y. 2013) ...................................................................... 12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
   127 S. Ct. 2499, 2509 (2007) ........................................................................................... 10

*Terwilliger v. Terwilliger,*
   206 F.3d 240, 245-46 (2d Cir. 2000). .............................................................................. 16

*Torres v. Gristede's Operating Corp.*,
   628 F. Supp. 2d 447, 470 (S.D.N.Y. 2008).. .................................................................... 15

*Veritas Capital Mgt., LLC v. Campbell*,
   82 A.D.3d 529, 530 (1st Dept. 2011). ............................................................................... 12

*Williams v. Time Warner Inc.*,
   No. 09 Civ. 2962 (RJS), 2010 WL 846970, at *6 (S.D.N.Y. Mar. 6, 2010).. .................... 16

*Yukos Capital S.A.R.L. v. Feldman*,
   977 F.3d 216, 229 (2d Cir. 2020) ..................................................................................... 11

## **Statutes**

N.Y. Ltd. Liab. Co. § 409 .......................................................................................................... 11

Plaintiff Katherine Ebel Pontius ("Plaintiff" or "Pontius") respectfully submits this memorandum of law in support of her motion to dismiss with prejudice the retaliatory and baseless counterclaims filed by Defendants G/O Media, Inc. and The Onion, Inc.'s in response to her action asserting claims of gender discrimination and retaliation.

## PRELIMINARY STATEMENT

All of Defendants' counterclaims rely on the same set of alleged facts: (1) Pontius was a C-suite executive at the Onion, (2) she received emails from then-President and CEO of The Onion, Michael McAvoy ("McAvoy"), who provided information about another high-level departure and provided an email setting forth his assessment of Pontius' diminution of responsibilities, (3) Pontius, per her contract, provided notice of good reason for her departure, and (4) then, Pontius and McAvoy "colluded" to prevent The Onion from curing her good reason for departing. Defendants allege that the foregoing acts constitute a breach of Pontius's contract and of her duties of loyalty and care, which entitle them to damages.

However, even accepting these facts as true, Defendants have failed to articulate a plausible claim against Pontius. First, the facts that Defendants allege regarding Pontius' receipt of emails from then-CEO McAvoy do not constitute a breach of any duties to the Company. Second, other than Pontius' receipt of emails, Defendants make only conclusory allegations regarding any purported breaches of fiduciary duty. While Defendants conclude that Pontius and McAvoy somehow colluded and that Pontius misled the Company, Defendants utterly fail to identify any specific acts or choices Pontius made that constitute a breach of her contract or fiduciary duty. Instead, Defendants hang their hope on the word "collusion," but devoid as it is here of any content, it cannot be a substitute for actual allegations. In short, Defendants' claims are meritless, and the Court should grant Plaintiff Pontius' motion to dismiss.

## STATEMENT OF FACTS[1]

### The Allegations in the Counterclaims

On January 14, 2016, Plaintiff – the Chief Resource Office ("CRO") of The Onion – entered into an Employment Agreement ("Agreement") with The Onion. Dkt. No. 29 ¶¶ 6, 9.[2] The Agreement provided that Pontius would be paid a base salary of $200,000 per year. ¶ 10. This amount was later raised to $240,000 by an amendment to the Agreement, effective September 25, 2018. ¶ 10.

The Agreement stated that Pontius was to "faithfully and diligently perform all services as may be assigned to her by the Chief Executive Office of the Company (the "CEO") *which are commensurate with Employee's title.*" ¶ 14; Dkt. No. 29 Ex. A ¶ 5 (emphasis added). The Agreement also included a provision permitting the company to "terminate Employee's employment at any time, without notice, for Cause." ¶ 15; Dkt. No. 29 Ex. A, Standard Terms and Conditions ¶ 2(a)(3). The Agreement defines "Cause" in the following manner:

> (i) upon written notice to Employee of any habitual neglect of the duties that Employee is required to perform; refusal or unwillingness to perform duties or other insubordination; provided that Employee shall have ten (10) days to cure, if curable; or
> (ii) sexual or other unlawful harassment; conduct that reflects adversely upon Company, any affiliate of Company, any officer or director of Company or any affiliate of Company or any Board member, including, without limitation, making publicly disparaging remarks; any willful act that is likely to or does in fact have the effect of injuring the reputation of Employee or the reputation, business, or a business relationship of any of the following: Company, any affiliate of Company, or any officer, director, or Board member of any of them; violation of any fiduciary duty; violation of any duty of loyalty; willful misconduct or gross negligence in connection with the performance of Employee's duties; breach of any material term of this Agreement; material breach of Company's Code of Conduct or similar written policies; conviction of, or a plea of guilty or nolo contendere to, a felony or any crime involving theft, fraud, or other illegal conduct involving dishonesty or moral turpitude.

---

[1] Because this is a motion to dismiss, the plausible factual allegations in the Counterclaims are assumed, though not conceded, to be true.
[2] Unless otherwise noted, paragraph citations ("¶ #") refer to the Counterclaims, Dkt. No. 29.

*Id.*

Similarly, under Section 2(a)(5) of the Agreement, "Resignation by Employee for Good Reason", the term "Good Reason" includes: "(i) any diminution in Employee's material responsibilities, authorities, or duties, but not merely a change; (ii) any reduction in Employee's Base Salary; (iii) any breach by the Company of its material obligations to Employee under this Agreement." *Id.* Under the Agreement, the employee must provide the Company sixty days-notice of such Good Reason, and the Company shall have an opportunity to cure such circumstances, if curable, within thirty days of receipt of such notice. ¶ 19; Dkt. No. 29 Ex. A, Standard Terms and Conditions ¶ 2(a)(5). Under Section 2(b) of the Agreement, if Pontius resigned for "good reason" the Company would have to pay Pontius her base salary for 12 months, and Pontius would have to comply with a non-compete. ¶ 21; Dkt. No. 29 Ex. A, Standard Terms and Conditions ¶ 2(b).

In April 2019, Great Hill Partners, a private equity group, purchased The Onion and Gizmodo Media Group from Univision Communications and created G/O Media Inc. ("G/O Media" or the "Company"). ¶¶ 3, 22. Defendant Jim Spanfeller ("Spanfeller") was installed as the CEO of the combined companies. *Id.* Pontius remained in her role as CRO of The Onion and all of her contractual obligations under the Agreement were assigned to G/O Media upon purchase of The Onion. ¶¶ 23-24.

After the purchase of The Onion, Pontius remained as an employee, but, as outlined in the Complaint, by May 2019, her role with the Company was uncertain. *See* Dkt. No. 31, Am. Compl. ¶¶ 82-92. That month, another executive from The Onion left the company by way of a confidential departure agreement. ¶ 26. Defendants allege that McAvoy, the then-President and Chief Executive Officer of The Onion, transmitted information and documents regarding this

7

executive's departure to Plaintiff so that she could use such information in negotiating her own departure from G/O Media. ¶ 27.

After the Company drastically reduced Plaintiff's responsibilities, effectively demoting her, on June 13, 2019, Plaintiff emailed McAvoy, consistent with the notice requirements of the Agreement,[3] stating "[t]he conditions, some of which are outlined below and all of which have been discussed at length, constitute grounds for Good Reason as defined in my employment agreement . . . and [I] would like to part ways with the company in accordance with the provisions of my agreement." ¶ 29; Dkt. No. 29 Ex. C.

Even though it contradicts its own allegations and admissions, G/O Media alleges that in June 2019, it wanted Pontius to remain at The Onion and looked for ways to cure her complaints. ¶ 32. Defendants fail to identify any actual measures the Company took to address the diminution of responsibilities that forms the basis for Pontius' good cause resignation. *Id.* Defendants further allege that Pontius and McAvoy were attempting to trigger the "good reason" resignation provisions of the Agreement. Specifically, Defendants allege that McAvoy shared privileged and confidential information with Pontius, namely, an email dated June 17, 2019, in which McAvoy explains why Pontius role's at the Company had been diminished ("June 17 Email"), so Pontius could obtain months of severance payments. ¶¶ 33-37, 41. Defendants again do not allege how that information was or could be used to the Company's competitive detriment, or how G/O Media was injured by Pontius obtaining that information.

On July 19, Pontius' resignation was effective, triggering her 12-month non-compete. *See* Dkt. No. 29, Ex. A, Standard Terms and Conditions ¶ 4(b). Pontius complied with the terms of

---

[3] As alleged in her Complaint, Plaintiff was told by G/O Media's General Counsel Lynn Oberlander that Pontius' June 13, 2019 email to McAvoy was insufficient to trigger a "good reason" resignation. Am. Compl. ¶ 113. Accordingly, Pontius sent a letter via fax on June 19, 2019 to the Chief Human Resources Officer and Office of the General Counsel detailing the diminution of her role. *Id.* ¶ 114.

8

the Agreement's non-compete as well as all of the other requirements set forth in the Agreement. Nonetheless, Defendants have not paid Pontius the severance to which she is entitled.

## PROCEDURAL HISTORY

Plaintiff filed her Complaint on September 11, 2020. Defendants then filed their Answer on November 20, 2020. *See* Dkt. No. 19. That same day, Defendants also filed a Letter Motion Seeking to Strike certain paragraphs of the Complaint, in which Defendants asserted privilege over the June 17 Email. *See* Dkt. No. 20. After responsive letter briefing, this Court issued a reasoned decision denying Defendants' motion, and declining to "resolve this issue definitively." *See* Dkt No. 27. On December 9, 2020, Defendants filed an Amended Answer with Counterclaims (the "Counterclaims"). *See* Dkt. No. 29. On December 11, 2020, Plaintiff filed an Amended Complaint asserting equal pay violations and additional post-separation retaliation, including the filing of the Counterclaims. *See* Dkt. No. 31. Defendants answered the Amended Complaint on December 28, 2020. *See* Dkt. No. 33.

## ARGUMENT

Pontius moves to dismiss the Counterclaims because Defendants rely exclusively on inadequate or conclusory allegations, and thus, fail to state a claim against her. The key documents here – various emails, the Agreement, and its amendments – have all been incorporated by reference in the Amended Complaint and Counterclaims. G/O Media's and Spanfeller's counterclaims are interlocking: their breach of contract claim is based on Pontius' purported breach of fiduciary duties. Those claims arise from the same core facts: Plaintiff's receipt of emails while she was employed at The Onion. However, those facts do not state a claim for a breach of either the duty of loyalty or duty of care. The remainder of Defendants'

allegations are nonspecific, conclusory assertions of wrongdoing, which are insufficient as a matter of law to state a claim. Thus, the Court should dismiss Defendants' Counterclaims.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must set forth sufficient factual allegations to "state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). The plausibility requirement means that a complaint must contain enough facts to raise a "reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claims. *Id.* at 566. A complaint must be dismissed "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

In assessing the sufficiency of a complaint, a court may consider documents relied upon or referenced in the complaint or matters in which the court can take judicial notice. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 127 S. Ct. 2499, 2509 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

I. **Defendants' Breach of Fiduciary Duty Claims Are Meritless**

Under New York law, an employee with an employment contract is subject to various overlapping legal doctrines, including the doctrines of fiduciary duty, duty of loyalty, and duty of care. Defendants' Counterclaims mash together these doctrines into two counterclaims—one for breach of fiduciary duty of care and the other for breach of fiduciary duty of loyalty/faithless servant doctrine. ¶¶ 50-60. To assert a claim for breach of fiduciary duty, New York law requires "(1) that a fiduciary duty existed between the Parties; (2) that the Defendant breached that duty;

10

and (3) that damages were incurred as a result." *Margrabe v. Sexter & Warmflash, P.C.*, No. 07 Civ. 2798 (KMK) (GAY), 2009 U.S. Dist. LEXIS 11426, at *21 (S.D.N.Y. Feb. 9, 2009). The fiduciary duty of care requires that "[a] manager shall perform his or her duties as a manager . . . in good faith and with that degree of care that an ordinarily prudent person in a like position would use under similar circumstances." *Balaj v. L&N Twins Place LLC (In re L&N Twins Place LLC)*, No. 20 Civ. 1858 (KMK), 2020 U.S. Dist. LEXIS 227952, at *8 (S.D.N.Y. Dec. 3, 2020) (citing N.Y. Ltd. Liab. Co. § 409).

Defendants' claim for breach of the fiduciary duty of care is duplicative and coextensive with their duty of loyalty claim — Defendants expressly assert that "Pontius breached her duty [of] care . . . by disregarding and acting disloyally and directly against the interests of the corporation." ¶ 57. Additionally, G/O Media's factual basis for these claims concerns Pontius' receipt of allegedly confidential information. *See* ¶¶ 3, 27, 34-35, 52. Those claims are coextensive with Defendants' breach of the duty of loyalty claim. Given that the rubric of the duty of loyalty claim is a more logical fit to the alleged facts, this briefing focuses on that cause of action.

## II. **Breach of the Duty of Loyalty Requires Wrongdoing by the Employee That Causes the Employer Competitive Injury**

"New York's faithless servant doctrine holds that "[o]ne who owes a duty of fidelity to a principal and who is faithless in the performance of his services is generally disentitled to recover his compensation, whether commissions or salary." *Yukos Capital S.A.R.L. v. Feldman*, 977 F.3d 216, 229 (2d Cir. 2020) (citing *Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 200 (2d Cir. 2003)). "An employee who is found to be faithless normally forfeits all compensation received during the period of disloyalty, regardless of whether the employer

suffered any damages." *Levy v. Young Adult Inst., Inc.*, 103 F. Supp. 3d 426, 440 (S.D.N.Y. 2015) (quoting *Stanley v. Skowron*, 989 F. Supp. 2d 356, 360 (S.D.N.Y. 2013).

Claims asserting employee breaches of the duty of loyalty are "available only where the employee has acted directly against the employer's interests – as in embezzlement, improperly competing with the current employer, or usurping business opportunities." *Grika v. McGraw*, 57 N.Y.S.3d 675 (N.Y. Sup. 2016) (quoting *Veritas Capital Mgt., LLC v. Campbell*, 82 A.D.3d 529, 530 (1st Dept. 2011)). Furthermore, actionable breaches of the duty of loyalty owed by employees "usually result in a personal gain to the employee and losses to the employer and are generally premised upon conduct by which profits, business opportunities, the raiding of employees and other assets including confidential and proprietary information of the employer are lost or diverted." *First Mfg. Co. v. Young,* 3 N.Y.S.3d 284 (N.Y. Sup. 2014) (emphasis added).

However, "the mere failure of an employee to perform assigned tasks does not give rise to a cause of action alleging breach of [the] duty [of loyalty]." *Cerciello v. Admiral Ins. Brokerage Corp.*, N.Y.S.2d 224, 226 (N.Y. Sup. 2011). "Rather, the employee's misuse of the employer's resources to compete with the employer is generally required." *Id.* (emphasis added). Indeed, employers have to do more than simply allege that an employee obtained confidential information; rather, New York law requires they allege how that information was used to the Defendants' detriment. *See Leary v. Fawaz Al-Mubaraki*, No. 18 Civ. 0048 (LTS) (HBP), 2019 U.S. Dist. LEXIS 170117, at *12-13 (S.D.N.Y. Sep. 30, 2019). Without alleging such a link to injury, employers fail to state a claim for breach of the duty of loyalty as a matter of law. *Id.*; *see also Grewal v. Cuneo*, No. 13 Civ. 6836 (RA), 2016 U.S. Dist. LEXIS 8349, at *23 (S.D.N.Y. Jan. 25, 2016) (dismissing breach of fiduciary duty and loyalty claims because employer "alleges

12


no facts establishing that Plaintiff misappropriated the firm's time or resources, that she diverted profits to herself, that she worked for a competing law firm, or that she solicited clients to start a competing business."); *Farricker v. Penson Dev., Inc.*, 07 Civ. 11191 (DAB), 2010 U.S. Dist. LEXIS 20918, at *6, *8 (S.D.N.Y. Mar. 4, 2010) (same).

### III. Pontius' Receipt of Information From Her Boss Is Not A Breach of Duty of Loyalty or Duty of Care

Defendants allege breach of fiduciary duties based on Pontius' receipt of information from the CEO of the Company. ¶¶ 27, 52. The Counterclaims contain allegations of only two instances in which information was transmitted from the CEO to Pontius: (1) in May 2019, Pontius received information concerning another executive's departure to Pontius, and (2) when she received the June 17 Email. *Id.*

However, Pontius' receipt of this information from her direct supervisor does not amount to a breach of the duty of loyalty. Receipt of this information does not rise remotely close to the level of wrongdoing necessary to sustain a claim of breach of duty of loyalty, which usually requires acting "directly against the employer's interests – embezzlement, improperly competing with the current employer, or usurping business opportunities," *Campbell*, 82 A.D.3d at 530 (1st Dept. 2011). Nor do the allegations support a theory of breach based on Pontius having failed to report the receipt of the information. G/O Media does not identify any obligation to make such a report as part of Pontius' duties, nor do they identify who Pontius is supposed to report to, given the information provided to her was transmitted by the CEO. Equally fatal to the Counterclaims, they are devoid of any allegations that Pontius' receipt of this information resulted in any actual injury to the Company's competitive interests — without such a link, Defendants fail to state a claim as a matter of law. *Leary*, 2019 U.S. Dist. LEXIS 170117, at *12-13; *Grewal*, 2016 U.S. Dist. LEXIS 8349, at *23; *Farricker*, 2010 U.S. Dist. LEXIS 20918, at *6, *8.

*Leary* is particularly instructive here. 2019 U.S. Dist. LEXIS 170117. There the defendant-employer filed counterclaims for breach of contract and fiduciary duty against the plaintiff-employee, who had filed discrimination and retaliation claims against his employer. *Id.* at *2. The employer alleged that the employee had violated the employer's code of conduct by "covertly send[ing employer's] confidential and proprietary business information to his Gmail address for personal use." *Id.* *9. Similar to G/O Media's counterclaims here, the employer's counterclaims were "devoid of any allegation that Mr. Leary used [the employer's] confidential information to compete against it, to divert [the employer's] business opportunities, or to engage in financially advantageous self-dealing." *Id.* at *10. After canvassing the applicable fiduciary duty and duty of loyalty case law, this Court held that "without allegations demonstrating that [the employee] engaged in self-interested conduct that negatively affected [the employer's] interests," the counterclaims must be dismissed. *Id.* at *11.

Here, Pontius is in an even stronger position than the employee in *Leary*. While she may have obtained purportedly confidential information about The Onion, unlike the employee in *Leary*, she did not misappropriate that information; rather, she was sent the information by the CEO of The Onion — her direct supervisor and a leading officer of The Onion. Nor can Defendants claim that Pontius used that information to compete with the Company, self-deal, or otherwise use the information to the Company's competitive detriment because any such allegation would be patently false. Without such allegations, G/O Media's breach of fiduciary duty and duty of loyalty claims are fatally flawed and should be dismissed. *See Leary*, 2019 U.S. Dist. LEXIS 170117, at *12-13; *Grewal*, 2016 U.S. Dist. LEXIS 8349, at *23; *Farricker*, 2010 U.S. Dist. LEXIS 20918, at *6, *8.

IV.     **Defendants' Remaining Allegations Are Conclusory, Unsupported, and Insufficient To State A Claim As A Matter Of Law**

Other than the receipt of the information from the CEO, Defendants do not allege any other actions or omissions that were directed against the competitive interests of G/O Media. Rather Defendants try to create an aura of wrongdoing by alleging that Pontius "colluded" with McAvoy and/or "misled" Defendants without providing any other information. *See* ¶¶ 3, 33, 43, 52. The one theme in all of those allegations is that Plaintiff somehow colluded with McAvoy to frustrate G/O Media's attempts to cure the diminution of responsibilities that was the basis for Pontius' good cause resignation. *See id.* However, Defendants do not allege how their efforts were frustrated, or how such conduct was in any way connected to the information provided by the CEO to Pontius. Such "[p]oorly described and unsubstantiated incidents of alleged wrongdoing are insufficient as a matter of law to support application of the faithless servant doctrine." *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 470 (S.D.N.Y. 2008).

At most, the Counterclaims allege that the Company made an effort to cure Pontius' diminution of responsibilities, which she rejected. Defendants allege that they wanted Pontius to remain at The Onion, but that she "colluded with McAvoy to attempt to trigger the 'good reason' resignation provisions of the Agreement," namely, by rejecting "G/O Media's efforts to cure any purported diminution of duties." Counterclaims ¶¶ 32, 33 52. Nothing in the law or the Agreement obligates Pontius to accept Defendants' overtures; while Plaintiff's refusal of Defendants' purported cure may be an affirmative defense to Plaintiff's breach of contract claim, Plaintiff breaches no duty of loyalty by rejecting G/O Media's proffered cure.

In short, the Counterclaims contain nothing more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," and they should be dismissed. *Iqbal*, 556 U.S. at 678.

## V. Defendants' Breach of Contract Claim Is Coextensive With Their Claims for Breach of Duty of Care and Loyalty

Under New York law, "to prevail on a breach of contract claim ... a plaintiff must prove [i] a contract; [ii] performance of the contract by one party; [iii] breach by the other party; and [iv] damages." *Williams v. Time Warner Inc.*, No. 09 Civ. 2962 (RJS), 2010 WL 846970, at *6 (S.D.N.Y. Mar. 6, 2010) (quoting *Terwilliger v. Terwilliger*, 206 F.3d 240, 245–46 (2d Cir. 2000)). "[I]t is beyond cavil that the failure of a party to perform its obligations under a valid and binding contract constitutes a breach and entitles the other contractually bound party to damages which arose out of the breach." *Ez-Tixz, Inc. v. Hit-Tix*, 969 F. Supp. 220, 225 (S.D.N.Y. 1997) (quoting *Custom Imports, Inc. v. Hanmee Trading Co.*, Inc., 596 F. Supp. 1126, 1130 (S.D.N.Y. 1984)).

Here, Defendants' breach of contract counterclaim rises and falls with their fiduciary duty claims. Pontius' Employment Contract provides that breaches of fiduciary duty can result in a termination for cause. Dkt. No. 29 Ex. A, Standard Terms and Conditions ¶ 2(a)(3). The breach of contract claim relies on the same factual predicate as the breach of fiduciary duty claims. *See also* ¶¶ 33-44. G/O Media's asserts that Plaintiff violated the fiduciary duties to which she was bound in her Agreement. *See* ¶ 47 (asserting breach of Paragraph 4 of the Agreement predicated on "breach[ing] her fiduciary duties, her duty of loyalty and candor, her obligation to faithfully and diligently perform the services assigned to her, and to comply with orders and directions from the company."). Since the breach of fiduciary duty claims are meritless, the Court should dismiss the breach of contract claim as well.

## CONCLUSION

Based on the foregoing, the Court should grant Plaintiff's Motion to Dismiss the Counterclaims.