UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

KATHERINE PONTIUS EBEL,

        Plaintiff and Counterclaim-Defendant,

-v-

G/O MEDIA, INC., ONION, INC., and JAMES SPANFELLER, individually,

        Defendants and Counterclaim-Plaintiffs.

20 Civ. 7483 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

This case concerns the departure by Katherine Pontius Ebel ("Pontius") from her role as Chief Resource Officer ("CRO") at defendant Onion, Inc. (the "Onion") and its parent company, G/O Media, Inc. ("G/O Media," and together with the Onion, "defendants"). Pontius worked at the Onion since 2011, but after its 2019 acquisition by non-party Great Hill Partners, LP ("Great Hill"), her relationship with the company broke down. She has sued defendants, along with G/O Media's CEO, James Spanfeller, alleging that, after she refused to participate in discriminatory layoffs, they discriminated and retaliated against her in violation of federal and state law. She also alleges that she was subject to unequal pay based on her gender and was denied severance pay after she resigned, which breached her employment agreement. Defendants deny these allegations. They also bring counterclaims, alleging that Pontius manufactured grounds for her departure to improperly gain severance pay, in breach of her employment agreement and fiduciary duties to defendants.

Before the Court is Pontius's motion to dismiss defendants' counterclaims. For the reasons that follow, the Court grants that motion.

## I. Background

### A. Factual Background[1]

#### 1. Parties

G/O Media is a Delaware corporation with its principal place of business in New York. Counterclaims ¶ 4. The Onion is a Wisconsin corporation with its principal place of business in Illinois. *Id.* ¶ 5. In April 2019, Univision Communications, which then owned the Onion, sold it and another media company, Gizmodo Media Group, to Great Hill. *Id.* ¶ 22.[2] Upon that sale, Great Hill consolidated the Onion and Gizmodo by creating G/O Media and naming Jim Spanfeller CEO of the combined companies. *Id.*[3]

Pontius has worked at the Onion since 2011, where she began as a "Human Resources Generalist" and, by January 2016, became Chief Resource Officer ("CRO") and Chief of Staff. FAC ¶¶ 15–18. She is a citizen of New York. Counterclaims ¶ 6. On July 19, 2019, she resigned from her employment at the Onion. *Id.*; FAC ¶ 144.

---

[1] The Court draws the facts from defendants' answer to the amended complaint, Dkt. 33 ("Answer"), and Counterclaims, Dkt. 29 at 27–37 ("Counterclaims"), including materials incorporated by reference in or integral to those pleadings. *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010). Those include Pontius's employment agreement, Dkt. 38-1 ("Emp. Agr."), an amendment to it, Dkt. 38-2 ("Am. Agr."), and an email thread between Pontius and the former President and CEO of the Onion, Dkt. 38-3 ("Email"). Where the Court describes allegations in Pontius's Amended Complaint, Dkt. 31 ("FAC"), it does so only for context, and not for the truth of the matters asserted. In resolving the motion to dismiss, the Court considers all well-pled facts in the Counterclaims to be true, drawing all reasonable inferences in defendants' favor. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

[2] Pontius originally named Great Hill as a defendant but has since stipulated to its dismissal, without prejudice, Dkt. 23, and did not include it as a party in the FAC.

[3] Pontius names Spanfeller as a defendant in the FAC but he does not bring counterclaims against Pontius.

## 2. Pontius's Employment Agreement

In January 2016, Pontius and the Onion entered into an employment agreement. Counterclaims ¶ 9. Under that agreement, Pontius received $200,000 per year until September 2018, when her pay increased to $240,000 per year. *Id.* ¶ 10. As CRO, Pontius held a position of trust and confidence, and owed duties of utmost loyalty and to deal honestly and fairly, with the Onion and its eventual owner, G/O Media. *Id.* ¶¶ 11–13. Further, Pontius's employment agreement required that she "faithfully and diligently perform all services as may be assigned to her." *Id.* ¶ 14. Pontius's obligations under the agreement transferred to G/O Media upon Great Hill's purchase of the Onion, after which Pontius remained in the same role as before the sale. *Id.* ¶¶ 23–24.

The agreement also contained provisions relating to the termination of Pontius's employment. *See* Emp. Agr. at 6–21 ("Standard Terms") ¶ 2. Under paragraph 2(a)(3), the Onion could terminate her employment at any time "for Cause." "Cause" was defined as, *inter alia*, "refusal or unwillingness to perform duties or other insubordination," "conduct that reflects adversely upon Company," "willful misconduct or gross negligence in connection with the performance of [Pontius's] duties," and "breach of any material term of this agreement." *Id.* ¶ 2(a)(3). In addition, paragraph 2(a)(5) allowed Pontius to resign for "Good Reason." To do so, Pontius was required to give the Onion notice that a "Good Reason event" had occurred, at which point the Onion had "an opportunity to cure such circumstances, if curable, within thirty (30) days of receipt of such notice." *Id.* ¶ 2(a)(5). If it failed to do so, then Pontius's employment terminated for good reason. A "Good Reason event" was defined, as relevant here, to include "any diminution in [Pontius's] material responsibilities, authorities, or duties, but not merely a change." *Id.* ¶ 2(a)(5)(i). Upon resignation for good reason, Pontius could receive her base salary for 12 months after resignation. *Id.* ¶ 2(b).

### 3. Pontius's Departure from the Onion

In May 2019, an Onion executive who is not identified in the pleadings left the company. Counterclaims ¶ 26. That departure was subject to a confidential agreement. *Id.* Defendants allege, upon information and belief, that then-President and CEO of the Onion, Michael McAvoy, sent confidential information about that departure to Pontius "so she could use that information to try to negotiate her own departure from her employment on lucrative terms." *Id.* ¶ 27.

On June 3, 2019, Pontius emailed McAvoy seeking to discuss her future at the company. *Id.* ¶ 28; Email at 3. She stated that the past few weeks had been "particularly frustrating," but that the months and years prior had also brought consternation, and that her "lack of authority is an issue." Email at 3. In support, she noted that she was "taking every personnel complaint request without having any information or an ability to resolve." *Id.* At the same time, when she offered to help with matters on which she did have expertise, she received no responses or was told that others were handling the issue. *Id.* She also described having to "wait[] for G/O to process" her requests "until weeks later when the ball has been dropped." *Id.* She complained that these issues, among others, "signal[ed] to the employee[s] and the staff that we no longer have any authority, or access, to decision making." *Id.*; *see also id.* at 4 ("A chief of staff without authority to make decisions is a punching bag."). Defendants claim that this email was an "effort to trigger the resignation provisions in her own employment contract," to collect her salary after departing. Counterclaims ¶ 28.

On June 13, 2019, Pontius again emailed McAvoy. *Id.* ¶ 29. In that email, she stated, "please accept this written notice of the material diminution of my authority, duties, and responsibilities of my role. The conditions, some of which are outlined below and all of which have been discussed at length, constitute grounds for Good Reason as defined in my employment agreement." *Id.*; Email at 3. She also stated that she hoped to "work out an amicable parting,"

noting that she had "cherished my time with Onion, Inc. and would like to part ways with the company in accordance with the provisions of my agreement." Email at 3.[4]

The same day, McAvoy responded. Counterclaims ¶ 30. He stated that he "take[s] this seriously," even though he hadn't "been able to get back to you on a solution for an amicable parting." Email at 2–3. He also noted his appreciation for "everything you've done to date," and his understanding that "it's less than what we asked you to [do] historically as well as recently, despite your intentions to do more." *Id.* at 3. As a result, he confirmed that he was "taking this as a formal recognition of diminishment," and promised that he would "circulate internally" and discuss next steps with her the next day. *Id.* Defendants hypothesize that, in this exchange, McAvoy was "looking for ways to help Pontius leave her employment even before she purported to give Good Reason notice under her agreement." Counterclaims ¶ 30. They also allege that defendants wanted Pontius to remain at the Onion and "looked for ways to cure her complaints," but identify no such attempts, or Pontius's response to them. *Id.* ¶ 32.

On June 17, 2019, McAvoy emailed G/O Media's then-general counsel, Lynn Oberlander, about Pontius's claim of diminution, allegedly "in an attempt to bolster" that claim. *Id.* ¶ 35. Defendants allege that McAvoy then improperly forwarded his exchange with Oberlander to Pontius, who included a portion of those privileged emails in the FAC. *Id.* ¶¶ 36–40. They allege that Pontius fell within their attorney-client privilege at the time, such that McAvoy's forwarding the message to her did not destroy its privileged status, and that she lacked authority to publicly reveal such privileged materials when she filed her complaint. *Id.* ¶¶ 41–44.

---

[4] Defendants allege that Pontius's employment agreement required such notice to be sent to G/O Media's general counsel, not McAvoy. Counterclaims ¶ 31. But the agreement itself designates, and only provides contact information for, *Univision's* general counsel. Standard Terms ¶ 6(b); Am. Agr. ¶ 5. In any event, Pontius alleges that she later provided notice to G/O Media's general counsel, after being told that her notice to McAvoy was ineffective. FAC ¶¶ 113–14.

## B. Defendants' Counterclaims

Defendants bring three counterclaims, for (1) breach of contract; (2) breach of fiduciary duty of loyalty/faithless servant; and (3) breach of fiduciary duty of care. *Id.* ¶¶ 45–60. They allege that Pontius breached her employment agreement by "brazenly breach[ing] her fiduciary duties, her duty of loyalty and candor, her obligation to faithfully and diligently perform the services assigned to her, and to comply with orders and directions from the company." *Id.* ¶ 47. As to the breach of the duty of loyalty, they allege that Pontius "collude[d] with McAvoy" to impede G/O's efforts to cure her diminution of duties and failed "to report her receipt of the privileged and confidential June 17, 2019 email from McAvoy." *Id.* ¶ 52. As for the duty of care, defendants' counterclaims do not identify any specific misconduct, but only that Pontius "act[ed] disloyally and directly against the interests of the corporation." *Id.* ¶ 57. As to each, defendants allege that they suffered damages including the salary they paid Pontius while she breached her duties and the legal costs of this dispute. *Id.* ¶¶ 49, 54, 58. Defendants do not allege that Pontius received any severance pay in connection with her resignation.

## C. Procedural History

On September 11, 2020, Pontius filed a complaint against G/O Media, Great Hill, the Onion, and James Spanfeller. Dkt. 1. On November 20, 2020, defendants filed an answer. Dkt. 19. The same day, they moved to strike two paragraphs in the complaint containing purportedly privileged material. Dkt. 20. The Court denied that motion given the sparse record presented, without prejudice to defendants renewing such motion after more discovery had taken place. Dkt. 27. On November 23, 2020, the Court entered Pontius's proposed stipulation of dismissal of Great Hill, dismissing it from the case without prejudice. Dkt. 23. On December 4, 2020, the case was automatically referred to the District's mediation program. Dkt. 26.

On December 9, 2020, defendants filed an amended answer with counterclaims. Dkt. 29. On December 11, 2020, Pontius filed the FAC. *See* FAC. On December 28, 2020, defendants answered the FAC. *See* Answer. On December 30, 2020, Pontius filed a motion to dismiss defendants' counterclaims, Dkt. 34, and a memorandum of law in support, Dkt. 35 ("Pl. Mem."). On January 20, 2021, defendants opposed the motion to dismiss, Dkt. 37 ("Def. Mem."), and filed the declaration of Wendy J. Mellk, Esq., Dkt. 38 ("Mellk Decl."), and exhibits in support. On February 3, 2021, Pontius replied. Dkt. 40 ("Pl. Reply"). On March 2, 2021, after mediation failed, the Court held an initial conference. Dkts. 41, 46.

## II. Legal Standard

"A motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint." *Dubov v. Lewis*, No. 18 Civ. 3854 (PAE), 2019 WL 1060652, at *2 (S.D.N.Y. Mar. 6, 2019) (quoting *Taupita Inv., Ltd. v. Leung*, No. 14 Civ. 9739 (PAE), 2017 WL 3600422, at *6 (S.D.N. Y. Aug. 17, 2017)).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. When resolving a motion to dismiss, the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch*, 699 F.3d at 145. That tenet, however, does not apply to legal conclusions. *See Iqbal*, 556 U.S. at 678. Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

**III.     Discussion**

Pontius moves to dismiss each of defendants' counterclaims. She argues that defendants fail to plausibly allege that she acted disloyally and that, because each counterclaim is based on the premise that she did so, each fails. Defendants contend that Pontius improperly treats their counterclaims as duplicative of one another, and that each is adequately pled. The Court holds with Pontius.

**A.     Breach of Duty of Loyalty and Faithless Servant**

Defendants style their claim for breach of the duty of loyalty as a "breach of fiduciary duty of loyalty/faithless servant." *See* Counterclaims at 34. As the Second Circuit has recently noted, "New York courts are far from clear regarding the contours of—and interplay between—a claim for breach of fiduciary duty and the faithless servant doctrine." *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 242 (2d Cir. 2020). As a result, some courts applying New York law have treated claims for breach of the duty of loyalty and claims brought under the faithless-servant doctrine as "doctrinally distinct." *Id.* (collecting cases); *see, e.g.*, *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 524–25 (S.D.N.Y. 2011). Others, however, have held the two to be "essentially the same." *Yukos*, 977 F.3d at 242 (collecting cases); *e.g.*, *Schanfield v. Sojitz Corp. of Am.*, 663 F. Supp. 2d 305, 348 (S.D.N.Y. 2009) ("[A] claim of breach of the duty of loyalty in New York" is "sometimes referred to as the 'faithless servant doctrine.'"). Here, both sides treat these claims as the same. And although the New York Court of Appeals does not appear to have clarified the issue since *Yukos*, the Circuit there seems to have approved such an approach. *See Yukos*, 977 F.3d at 242 (noting that caselaw suggested that the faithless-servant doctrine provides a way to satisfy the "damage" element of a breach of fiduciary duty claim). Thus, the Court treats this counterclaim as a single claim for breach of the duty of loyalty, brought under the faithless-servant doctrine.

8

Under that doctrine, an agent is required "to be loyal to his employer and is 'prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties.'" *W. Elec. Co. v. Brenner*, 41 N.Y.2d 291, 295 (1977) (quoting *Lamdin v. Broadway Surface Advert. Corp.*, 272 N.Y. 133, 138 (1936)); *see Phansalkar v. Andersen Weinroth & Co.*, 344 F.3d 184, 200 (2d Cir. 2003) (same). An employer can recover compensation paid to a faithless servant if it shows "(1) that the employee's disloyal activity was related to 'the performance of his duties,' and (2) that the disloyalty 'permeated the employee's service in its most material and substantial part.'" *Sanders v. Madison Square Garden, L.P.*, No. 06 Civ. 589 (GEL), 2007 WL 1933933, at *4 (S.D.N.Y. July 2, 2007) (quoting *Phansalkar*, 344 F.3d at 200, 203). Unlike a traditional claim for breach of a fiduciary duty, an employer bringing a faithless-servant claim "is not required to show that it 'suffered . . . provable damage as a result of the breach of fidelity by the agent.'" *Id.* (quoting *Feiger v. Iral Jewelry, Ltd.*, 41 N.Y.2d 928, 929 (1977)).

However, "[t]he duty of loyalty has been limited to cases where the employee, acting as the agent of the employer, unfairly competes with his employer, diverts business opportunities to himself or others to the financial detriment of the employer, or accepts improper kickbacks." *Farricker v. Penson Dev., Inc.*, No. 07 Civ. 11191 (DAB), 2010 WL 845983, at *2 (S.D.N.Y. Mar. 4, 2010) (citation omitted). A claim "for breach of the duty of loyalty . . . is available only where the employee has acted directly against the employer's interests—as in embezzlement, improperly competing with the current employer, or usurping business opportunities." *Veritas Cap. Mgmt., LLC v. Campbell*, 82 A.D.3d 529, 530 (1st Dep't 2011). "[M]isuse of the employer's resources to compete with the employer is generally required." *Cerciello v. Admiral Ins. Brokerage Corp.*, 90 A.D.3d 967, 968 (2d Dep't 2011).

Measured against this standard, defendants' counterclaims fall far short. Defendants allege that Pontius acted faithlessly by (1) "improperly colluding with McAvoy and making a conscious effort to impede G/O's efforts to cure any purported diminution of duties"; and (2) "failing to report her receipt of the privileged and confidential June 17, 2019 email from McAvoy." Counterclaims ¶ 52. Both claims fail.

As to defendants' allegations of "collusion" and obstruction, these are conclusory, speculative, and contradicted by their own pleadings. Defendants allege that McAvoy sent Pontius certain confidential information, that Pontius notified him that she believed she had good reason to resign from her position, and that McAvoy then accepted that notice. *Id.* ¶¶ 27–30. They emphasize that McAvoy expressed to Pontius that he hoped to arrange an "amicable parting," and that this "revealed that McAvoy was looking for ways to help Pontius leave her employment even before she purported to give Good Reason notice." *Id.* ¶ 30. These actions, however, support neither the label of "collusion" nor the sinister pall that defendants attribute to them. Pontius's initial email to McAvoy set forth, in detail, her complaints about G/O Media's mismanagement of the Onion and its deleterious effects on her role at the company. *See* Email at 3–4. The counterclaims do not dispute the validity of those grievances. Ten days later, after McAvoy failed to respond, Pontius followed up to provide written notice that she believed the changes to her role constituted good reason for her resignation. *Id.* at 3. Even so, she expressed her affection for the Onion and her hope to leave her employment on "amicable" terms. *Id.* McAvoy responded that he would "tak[e] this as a formal recognition of diminishment," and confirmed that he, too, hoped for "an amicable parting." *Id.* at 2–3. That exchange does not, other than by sheer speculation, support that the two improperly colluded to "manufacture" or "engineer" good reason for Pontius's resignation. *See Twombly*, 550 U.S. at 556 ("Factual

10

allegation must be enough to raise a right of relief above the speculative level."). At most, it shows that Pontius was frustrated in her job and that McAvoy was, to some extent, sympathetic to her complaints. Nor do defendants explain how, if at all, Pontius could have (or did) use unspecified, but purportedly confidential, information from McAvoy to bolster her claims of good reason. Notably, defendants do not make *any* factual allegations to support, even by speculation, that Pontius made "a conscious effort to impede G/O's efforts to cure any purported diminution of duties." Counterclaims ¶ 52. They allege neither any specific efforts to cure by G/O Media, nor any concrete actions that Pontius took to thwart them.

As for Pontius's receipt of a June 17, 2019 privileged email from McAvoy, defendants' own allegations make clear that, when she received the email, she was "within [defendants'] privilege." *Id.* ¶ 42. Thus, the Court has no reason to conclude that her receipt of that email was improper, let alone a breach of her fiduciary duties. Nor do defendants offer any support for their premise that she had a duty to "report" such receipt, even if it was untoward. Similarly, although defendants allege that Pontius used the contents of this email to "improperly engineer a good reason resignation," Def. Mem. at 12,[5] that claim is factually unsupported. Defendants do not explain how that was so, and their other allegations point in the opposite direction. The only actions that defendants allege Pontius took in support of her resignation occurred on June 3

---

[5] Defendants' counterclaims do not allege that Pontius used the June 17 email in support of her resignation; that claim appears for the first time in defendants' opposition brief. *Compare* Counterclaims ¶¶ 34–44 (alleging only that Pontius included the text of that email in her complaint, and that McAvoy *sent her* the email in an "attempt to bolster Pontius's claims of diminishment"), *with* Def. Mem. at 12 (alleging Pontius's "disloyal use of the information in the Privileged Email to improperly engineer a good reason resignation"). Parties may not, however, amend their pleadings through allegations made in motion papers. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998). And McAvoy's motives in sending her the email do not, without further elaboration, speak to Pontius's conduct in or after receiving it.

11

and 13—before McAvoy allegedly provided her with any privileged information. Counterclaims ¶¶ 28–30. Defendants thus do not explain how this information could have played—let alone did play—any role in her attempt to "improperly engineer a good reason resignation." Def. Mem. at 12. Such "[p]oorly described and unsubstantiated incidents of alleged wrongdoing are insufficient as a matter of law to support application of the faithless servant doctrine." *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 470 (S.D.N.Y. 2008).

More fundamentally, even had defendants buttressed these conclusions with plausible factual support, they would not state a claim for breach of Pontius's duty of loyalty. Defendants allege, at most, that Pontius baselessly (and, apparently, unsuccessfully) sought to trigger the good-reason provision of her employment contract, and improperly received and maintained confidential and privileged documents. Those alleged wrongs are far afield of those that courts have held make an employee a faithless servant—including in the cases on which defendants mainly rely. *See, e.g., Charles Ramsey Co. v. Fabtech-NY LLC*, No. 18 Civ. 546 (LEK) (CFH), 2020 WL 352614, at *17 (N.D.N.Y. Jan. 21, 2020) (employees withheld financial data from employer, sabotaged employer's business by laying off key employees, encouraged employees to go work for a competitor, attempted to set up a competitor, and stole money from employer); *Parneros v. Barnes & Noble, Inc.*, No. 18 Civ. 7834 (JGK), Dkt. 78 at 9 (S.D.N.Y. May 6, 2019) (employee "intentionally undertook a series of acts to successfully sabotage a transaction that the board of directors believed to be in [the employer's] interest," because he stood to lose his job if the transaction went through); *Morgan Stanley v. Skowron*, 989 F. Supp. 2d 356, 362 (S.D.N.Y. 2013) (employee faithless because "[i]nsider trading is the ultimate abuse of a portfolio manager's position"); *Bon Temps Agency Ltd. v. Greenfield*, 184 A.D.2d 280, 281 (1st Dep't 1992) (employee secretly usurped employer's business while "establishing and performing duties under a company

in direct competition with" employer).[6] As then-District Judge Lynch explained in dismissing similarly deficient faithless-servant counterclaims, it is important to ensure that this doctrine does "not stretch so far," given its severe penalty: forfeiture of an employee's entire salary during the period of faithlessness. *Sanders*, 2007 WL 1933933, at *6 ("The remedies of the faithless servant doctrine are drastic, and appropriately so where the doctrine applies.").

Thus, New York courts have applied the faithless-servant doctrine only in the limited circumstances "where the employee has acted directly against the employer's interests—as in embezzlement, improperly competing with the current employer, or usurping business opportunities." *Veritas*, 82 A.D.3d at 530. Here, however, defendants seek to impose this harsh remedy on Pontius for attempting to invoke her rights to severance pay using the very procedures set out in her employment contract. That is simply not the kind of "blatant self-dealing" or conflict of interest contemplated by New York law. *Bos. Consulting Grp., Inc. v. NCR Corp.*, No. 19 Civ. 10156 (LGS), 2020 WL 5731963, at *4 (S.D.N.Y. Sept. 24, 2020); *see, e.g.*, *Grika v. McGraw*, No. 650459/2016, 2016 WL 8716417, at *15 (N.Y. Sup. Ct. 2016) (dismissing faithless-servant claim where the complaint "contain[ed] no allegations that defendant employees acted against the Company's interest, such as competing with [the company] while still an employee, using company resources for non-business purposes, taking bribes from issuers to give higher ratings or diverting corporate opportunities"), *aff'd*, 161 A.D.3d 450 (1st Dep't 2018); *Linder v. Innovative Com. Sys. LLC*, 981 N.Y.S.2d 636 (N.Y. Sup. Ct. 2013), *aff'd*, 127 A.D.3d 670 (2015) (similar). The Court thus dismisses defendants' counterclaim for breach of the duty of loyalty.

---

[6] They also fall short even of the conduct alleged in some cases where courts have dismissed such claims as insufficient. *See, e.g.*, *Sanders*, 2007 WL 1933933, at *3–7 (faithless-servant claim would be futile where defendants alleged that plaintiff operated a secret unauthorized business or committed tax fraud).

### B. Breach of Duty of Care

The Court also dismisses defendants' largely undifferentiated claim for breach of the duty of care. "The elements of a cause of action for participation in a breach of fiduciary duty are: breach by a fiduciary of a duty owed to plaintiff; defendant's knowing participation in the breach; and damages." *SCS Commc'ns, Inc. v. Herrick Co.*, 360 F.3d 329, 342 (2d Cir. 2004); *see Margrabe v. Sexter & Warmflash, P.C.*, 353 F. App'x 547, 549 (2d Cir. 2009) (summary order) ("In order to sustain a claim of breach of fiduciary duty under New York law, Appellant must prove the existence of a fiduciary relationship, misconduct by the Appellees, and damages directly caused by the Appellees' misconduct." (cleaned up)).

Defendants do not allege any specific facts in support of this claim. Instead, they simply assert that Pontius breached her fiduciary duty of care "by disregarding and acting disloyally and directly against the interests of the corporation." Counterclaims ¶ 57. For the reasons discussed, defendants have not plausibly alleged that Pontius acted disloyally or against their interests. In opposition, defendants argue that this claim and their faithless-servant claim are distinct, and contain different elements. *See* Def. Mem. at 8–9. That, of course, is true. But here, defendants' factual allegations in support of both claims are coterminous, and both rest on the charge of disloyalty. Confronted with that fact by Pontius's motion to dismiss, defendants in their opposition do not offer any theory for how these facts could plausibly support liability on this claim, even if they fail as to the faithless-servant claim. Because the Court has held the facts, as pled, insufficient to support the charge of disloyalty that undergirds both claims of breach of fiduciary duty, the failure of one, in this case, entails the failure of the other. As a result, the Court dismisses defendants' counterclaim for breach of the duty of care for the same reasons it dismissed their counterclaim for breach of the duty of loyalty.

## C. Breach of Contract

Finally, defendants breach-of-contract claim fails for essentially the same reasons. To state a claim for breach of contract under New York law, defendants must allege "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)). To plausibly allege a breach, a party must identify "the specific provisions of the contract upon which liability is predicated." *Benihana of Tokyo, LLC v. Angelo, Gordon & Co.*, 259 F. Supp. 3d 16, 33 (S.D.N.Y. 2017) (citing *Sud v. Sud*, 211 A.D.2d 423, 424 (1st Dep't 1995)), *aff'd*, 712 F. App'x 85 (2d Cir. 2018).

Defendants allege that Pontius breached paragraph five of her employment agreement, which provides that she "will faithfully and diligently perform all services as may be assigned to her by the Chief Executive Officer of the Company," and will "comply with all rules, regulations, policies, orders, and directions, whether oral or written, as Company may prescribe from time to time." Emp. Agr. ¶ 5.[7] They claim that she did so by "brazenly breach[ing] her fiduciary duties, her duty of loyalty and candor, her obligation to faithfully and diligently perform the services assigned to her, and to comply with orders and directions from the company." Counterclaims ¶ 47. In their opposition, they more specifically state that the predicates for such breaches were (1) "failing to report her receipt of the Privileged Email, and instead, using the Privileged Email and other information relayed to her by McAvoy to impede G/O' Media's and the Onion's

---

[7] The counterclaims appear erroneously to identify paragraph four as the relevant provision, *see* Counterclaims ¶ 47, but that provision concerns only Pontius's signing bonus of $20,000, which does not appear to be at issue, *see* Emp. Agr. ¶ 4. In their opposition, defendants cite paragraph five and do not discuss paragraph four. *See* Def. Mem. at 14–15. The Court thus treats this as the applicable contract term.

efforts to cure any purported diminution of duties"; and (2) "acting contrary to the interest of Defendants by seeking to improperly trigger the resignation provisions of the Agreement." Def. Mem. at 15.

As discussed, defendants do not allege any facts that plausibly support that Pontius's effort to "trigger the resignation provisions of the Agreement" were improper, or that she impeded defendants' efforts to cure her diminution of duties. Similarly, although her employment agreement required Pontius to "comply with all rules, regulations, policies, orders, and directions" of defendants, defendants again do not identify any such rule or policy that required her to report receipt of a privileged email—let alone to report such an email from the company's CEO while, as an executive employee herself, she was concededly within the company's privilege. Finally, as Pontius notes, defendants' claim that she breached the agreement by breaching her fiduciary duties and failing to "faithfully and diligently perform all services" depends on the claims already rejected. For the reasons already given, defendants have failed to allege that Pontius's exercise of her resignation rights under her employment agreement breached any fiduciary duty. However framed, defendants have not plausibly alleged that Pontius engaged in disloyalty, self-dealing, or misfeasance.[8] Instead, they seek to penalize her for attempting to take advantage of a contractual benefit to which they do not believe she is entitled—and which they have, lawfully or not, denied her. Thus, the Court also dismisses defendants' breach-of-contract counterclaim.

---

[8] Defendants again resist the conclusion that their overlapping claims are subject to overlapping flaws by noting that, as a legal matter, parties may assert both contractual and fiduciary claims arising from the same set of facts. *See* Def. Mem. at 13–14. Again, that is true. But Pontius does not argue, and the Court has not held, that parties cannot so plead. Defendants' claims do not fail *because* they are duplicative; defendants have simply pled their claims duplicatively, such that each fails for essentially the same reasons.

## CONCLUSION

For the foregoing reasons, the Court grants Pontius's motion to dismiss defendants' counterclaims. The Clerk of Court is respectfully directed to terminate the motion pending at docket 34.

SO ORDERED.

                                                  PAUL A. ENGELMAYER
                                                  United States District Judge

Dated: May 21, 2021
       New York, New York