UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

KATHERINE PONTIUS EBEL,

        Plaintiff and Counterclaim-Defendant,

-v-

G/O MEDIA, INC., ONION, INC., and JAMES
SPANFELLER, individually,

        Defendants and Counterclaim-Plaintiffs.

------------------------------------------------------------

20 Civ. 7483 (PAE)

OPINION &
ORDER

PAUL A. ENGELMAYER, District Judge:

On May 21, 2021, the Court dismissed counterclaims that defendants and counterclaim-plaintiffs G/O Media, Inc. ("G/O Media") and Onion, Inc. (the "Onion," and together with G/O Media, "defendants") had brought against plaintiff and counterclaim-defendant Katherine Pontius Ebel ("Pontius"). Dkt. 48 ("May 21 Op."). The Court held that defendants had not plausibly alleged that Pontius had breached her fiduciary duties or employment agreement. *Id.*

Before the Court now is defendants' motion for reconsideration and leave to amend their counterclaims. For the reasons that follow, the Court grants that motion in part and denies it in part. Defendants' motion for leave to amend their counterclaims is granted in part, as set forth below. In all other respects, their request for reconsideration and leave to amend is denied.

**I.    Background**

The facts, as originally pled, and procedural history are set out fully in the Court's May 21 Opinion. *See id.* at 2–7. The Court incorporates those here by reference, and sets forth below only a summary of them. The Court also notes the new evidence that defendants ask the Court to consider.

In brief, between 2011 and 2019 Pontius served as an employee of the Onion. *Id.* at 2. By January 2016, she became Chief Resource Officer and Chief of Staff to Michael McAvoy, the Onion's then-President and CEO. *Id.* at 2–4. In that role, Pontius held a position of trust of confidence with the Onion, and owed it fiduciary duties of utmost loyalty and to deal honestly and fairly with it. *Id.* at 3. In 2016, she and the Onion entered into an employment agreement. *Id.*; *see* Dkt. 38-1 ("Emp. Agr."); Dkt. 38-2 ("Am. Agr."). That agreement required her to "faithfully and diligently" perform her work. May 21 Op. at 3. It also allowed her to resign for "Good Reason," in which case she could receive her base salary for a year after her resignation. Emp. Agr., Standard Terms ("Std. Terms") ¶ 2(a)(5). To do so, Pontius had to give the Onion notice that a "Good Reason event" had occurred, at which point the Onion had "an opportunity to cure such circumstances, if curable, within thirty (30) days of receipt of such notice." *Id.* A "Good Reason event" was defined to include "any diminution in [Pontius's] material responsibilities, authorities, or duties, but not merely a change." *Id.* ¶ 2(a)(5)(i).

In April 2019, the Onion's prior owner sold it and another media company to Great Hill Partners, LP ("Great Hill"), which consolidated the two companies by creating G/O Media. May 21 Op. at 2. Soon after, turmoil at the newly combined entities gave rise to the events at the center of this litigation. *Id.* at 1. On April 22, 2019, G/O Media's CEO, James Spanfeller, offered Pontius the job of Chief Talent Officer ("CTO") at G/O Media. Dkt. 29 at 27–37 ("Counterclaims") ¶ 25. The Counterclaims did not elaborate on what became of that offer, and the parties now dispute that fact: defendants claim that Pontius "turn[ed] down" the job, Dkt. 52 ("Def. Mem.") at 7, while Pontius responds that she did not decline the offer, and that Spanfeller instead withdrew it after Pontius objected to what she viewed as the improper termination of another Onion employee, *see* Dkt. 57 ("Pl. Mem.") at 8 n.6.

In May 2019, another Onion executive, whom defendants have now identified as Kurt Mueller, left the company subject to a confidential agreement. May 21 Op. at 4. Defendants alleged that McAvoy sent Pontius information about that departure so she could use it "to try to negotiate her own departure from her employment on lucrative terms." *Id.* (quoting Counterclaims ¶ 27). Defendants now further contend that McAvoy has since stated, at his deposition in another case, that he had discussed this departure with Pontius around the time that Mueller's agreement was executed, and that Pontius was thus aware of the terms of that agreement. *See* Def. Mem. at 8–9. As McAvoy explained in the deposition defendants attached as an exhibit to their reconsideration motion, however, Pontius "was aware of all personnel matters for Onion, Inc. employees" because "she handled all the personnel issues" at the company in her role as Chief of Staff to McAvoy. *See* Dkt. 53 ("Mellk Decl."), Ex. A ("McAvoy Tr.") at 109, 112.

In June 2019, Pontius and McAvoy emailed each other regarding Pontius's complaints about her role at the Onion. *See* May 21 Op. at 4–5. On June 3, 2019, Pontius wrote to McAvoy expressing her frustrations. *Id.* at 4. On June 13, 2019, she emailed him again, purporting to give written notice of a "material diminution" of her duties, which constituted good reason for her resignation as defined in her employment agreement. *Id.* The same day, McAvoy responded confirming that he would take this as a "formal recognition of diminishment" and discuss it with others at the Onion. *Id.* at 5. Defendants now claim, based on purported new evidence that they have not included with their motion, that Pontius and McAvoy were also communicating via private, non-company email accounts at some point in June. Def. Mem. at 10. They also note, based on McAvoy's testimony, that Pontius raised these concerns about diminution and her role at the company only after she became aware of Mueller's departure, despite some of those concerns dating to the time before Univision sold the Onion to Great Hill. *Id.* at 9–10.

3

On June 17, 2019, McAvoy emailed G/O Media's then-general counsel, Lynn Oberlander, about Pontius's claim, allegedly in an attempt to "bolster" it. May 21 Op. at 5. Later, on July 13, 2019, McAvoy forwarded this email exchange to Pontius (along with a May 22–23, 2019 exchange between McAvoy, Spanfeller, and another employee regarding Mueller's separation from the Onion). *See* Mellk Decl., Exs. B, I.

Defendants did not include any allegations about other communications in their counterclaims, but now detail several additional messages. On June 18, 2019, Oberlander emailed Pontius in response to her notice of diminution, informing her that she was required to send such notice to Oberlander, not McAvoy, and reminding her that defendants had a 30-day window in which to try to cure any material diminution. Def. Mem. at 10. On June 19, 2019, Pontius responded to Oberlander via fax and through counsel, with a notice of resignation for good reason, explaining why she believed her position at the Onion had been diminished. *Id.* at 10–11. On June 24, 2019, Spanfeller emailed McAvoy about Pontius's notice, stating that McAvoy may be responsible for the changes to Pontius's role of which she complained, and tasking him with rectifying the situation. *Id.* at 11; Mellk Decl., Ex. E.[1] Defendants claim that they have "now confirmed" that McAvoy and Pontius, at this time, were secretly communicating and that McAvoy disclosed to her "how he was going to respond to their employer's demand for assistance and thwart the request to help cure Pontius's claim of diminishment," but have not filed such communications. Def. Mem. at 11.

---

[1] In their brief, defendants claim that "McAvoy did not provide any substantive suggestions" in response. Def. Mem. at 11. It is unclear what defendants intend to mean by "substantive," as the exhibits attached to their motion suggest that McAvoy did make a proposal as to how the company might cure Pontius's claims. *See* Mellk Decl., Ex. G at 4 (July 10, 2019 email from McAvoy to Spanfeller noting that "the cure proposal in the letter was not what I had proposed"). In any event, the precise nature of McAvoy's proposal does not appear material to the present motion, which relates to Pontius's, not his, actions.

On July 5, 2019, Oberlander responded to Pontius's faxed notice, proposing specific solutions to cure Pontius's alleged diminution. *Id.* at 12; Mellk Decl., Ex. F (proposing an expanded managerial role overseeing "A.V. Editorial and A.V. Video," a role in "implement[ing] strategy and manag[ing] personnel and assist[ing] in the hiring of new people," and inclusion in weekly leadership meetings in order to allow Pontius to help "set[] strategy" for the company). On July 9, 2019, Spanfeller wrote to McAvoy to ask him if he and Pontius were attending that day's leadership call. Def. Mem. at 12; Mellk Decl., Ex. G. Neither attended, and Spanfeller again wrote asking McAvoy if he had invited her, why she did not attend if so, and to make sure to invite her to the next week's meeting. Mellk Decl., Ex. G at 3. On July 10, 2019, after Spanfeller again emailed McAvoy asking about Pontius's absence, McAvoy admitted that he had not invited her. *Id.* at 4. On July 11, 2019, McAvoy was terminated for cause. Def. Mem. at 12. The same day, Pontius, through counsel, responded to Oberlander's July 5, 2019 proposal, rejecting it. *Id.* (citing Dkt. 31 ("FAC") ¶ 131); *see* Pl. Mem. at 16–17 (quoting letter summarizing Pontius's objections to Oberlander's cure proposal, including that Oberlander's proposals did not materially restore Pontius's role and were unhelpfully vague). Later that day, G/O Media's counsel responded. Def. Mem. at 12–13; Mellk Decl., Ex. H.

On July 13, 2019, McAvoy forwarded Pontius two emails, using their private non-company email addresses. First, he sent her a May 22–23, 2019 email chain between himself, Spanfeller, and another employee, discussing the terms of Mueller's separation from the Onion. Second, he sent her his June 17, 2019 correspondence with Oberlander about her original notice of a material diminution. *See* Def. Mem. at 13; Mellk Decl., Exs. B, I. Pontius later disclosed the substance of the latter communication, which defendants claim was subject to the attorney-client privilege, in 2020 when she filed the complaint in this action. *See* FAC ¶¶ 109–10.

On July 16, 2019, Pontius sent Spanfeller an email with her recommendations for A.V. Club, which appears to be an online publication under the G/O Media umbrella. Def. Mem. at 13–14; *see* Mellk Decl., Ex. J at 2–3. The same day, Spanfeller responded noting that he saw "great merit" in her suggestions, but was "not sure how fast we might enact some or all of this." Mellk Decl., Ex. J at 2. In the same email, he also advised that Pontius should "continue to oversee these operations," as well as something else called "The TakeOut." *Id.* On July 17, 2019, he wrote again, informing Pontius that he would like her to take on an expanded leadership role at the company. Def. Mem. at 14 (citing FAC ¶ 140). On July 18, 2019, Pontius responded that she did not believe G/O Media's recent words and promises to be sincere, and that she had been complaining for months about her situation. *Id.* (citing FAC ¶ 141). On June 19, 2019, Pontius resigned, purportedly for good reason, and sought a $240,000 severance payment under her employment agreement. *Id.* (citing FAC ¶ 144).

On September 11, 2020, Pontius commenced this action. Dkt. 1. On November 20, 2020, defendants answered the complaint. Dkt. 19. On December 9, 2020, defendants filed an amended answer with counterclaims. Dkt. 29. On December 11, 2020, Pontius filed the FAC. Dkt. 31. On December 28, 2020, defendants filed an amended answer. Dkt. 33. On December 30, 2020, Pontius moved to dismiss defendants' counterclaims. Dkts. 34–35. After briefing, the Court granted that motion. *See* May 21 Op. It held that defendants had not plausibly alleged that Pontius and McAvoy colluded to engineer a good-reason resignation, and even if they had—and even if Pontius had improperly received and used confidential information in doing so—such would not constitute a breach of Pontius's duty of loyalty. *Id.* at 8–13. Because defendants' other counterclaims, for breach of contract and breach of the duty of care, rested on the same charge—that Pontius had acted disloyally—it dismissed those counterclaims as well. *Id.* at 14–16.

As to the instant motion, on June 4, 2021, defendants filed their motion for reconsideration or, in the alternative, leave to amend, Dkt. 51, as well as a memorandum in support, Def. Mem., and the declaration of Wendy Mellk, Esq., with supporting exhibits. On June 7, 2021, the Court directed Pontius to respond to that motion. Dkt. 54. On June 21, 2021, Pontius filed an opposition, Pl. Mem., and the declaration of Julia Elmaleh-Sachs, Esq., Dkt. 58 ("Elmaleh-Sachs Decl."), with supporting exhibits.

## II. Legal Standard

The standard governing motions for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted); *see also* S.D.N.Y. Local Civil Rule 6.3 (requiring the movant to "set[] forth concisely the matters or controlling decisions which counsel believes the Court has overlooked"). Such a motion "is neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously advanced." *Associated Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005); *see also Goonan v. Fed. Rsrv. Bank of N.Y.*, No. 12 Civ. 3859 (JPO), 2013 WL 1386933, at *2 (S.D.N.Y. Apr. 5, 2013) ("Simply put, courts do not tolerate such efforts to obtain a second bite at the apple."). Rather, reconsideration is appropriate "only when the [moving party] identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

7

## III. Discussion

### A. Reconsideration

Defendants seek reconsideration of the entirety of the May 21 Opinion. First, as to all claims, they argue that the Court "overlooked factual matters that might reasonably be expected to alter the Court's conclusions." Def. Mem. at 1. Second, they argue that new evidence bolsters their claims. Third, as to their claim for breach of the duty of loyalty, they argue that the Court impermissibly narrowed the relevant legal framework for such a claim. And fourth, as to their breach of contract counterclaim, defendants argue that the Court ignored one theory of breach that they presented.

First, as to defendants' charge that the Court overlooked factual matters, that is incorrect. They contend that the Court "overlooked" the following: (1) "the overall timing of events"; (2) Pontius's "failure to engage at all in Defendants' attempt to cure her alleged concerns in violation of the terms of her Employment Agreement"; (3) "Defendants' claim that Plaintiff not only received, but disclosed privileged information in violation of her duties as a corporate officer"; and (4) the fact that defendants do contest that Pontius's role was diminished. *See* Def. Mem. at 1, 5.

The Court accurately summarized the timing of events alleged in the counterclaims: that Mueller (then unnamed) left the company in May 2019; that McAvoy improperly sent Pontius confidential information about that departure; that Pontius then sent McAvoy notice of a material diminution; and that McAvoy then accepted that notice. *See* May 21 Op. at 4–6, 10. True, it did not emphasize the fact that Pontius had been offered the position of CTO at G/O Media in April 2019. But defendants had not explained what became of that offer, or why it was relevant to their claims of disloyalty or breach. *See* Counterclaims ¶ 25.

The Court also acknowledged defendants' claim that Pontius impeded their efforts to cure her complaints. *See* May 21 Op. at 5–6, 10–11. But it noted that they did not allege "any specific efforts to cure by G/O Media, nor any concrete actions that Pontius took to thwart them," and so did not have any basis on which to assess whether such actions breached any duty to defendants. *Id.* at 11.

The Court further recognized that Pontius disclosed the June 17, 2019 privileged email in this action. *See id.* at 6, 11 & n.5. But defendants did not plead, or argue in their opposition brief, that doing so breached any fiduciary duty; instead, they argued that her *receipt* of the email without reporting it to defendants, and use of its contents in claiming good reason for her resignation, breached such duty. *See, e.g.*, Counterclaims ¶ 3 ("Pontius *received* privileged and confidential information from another employee that she should not have, and *failed to disclose* this information in violation of her fiduciary duty" (emphasis added)); *id.* ¶ 52(b) (Pontius breached her fiduciary duties by "*failing to report* her receipt of the privileged and confidential June 17, 2019 email from McAvoy" (emphasis added)); Dkt. 37 ("Def. MTD Opp'n") at 12 ("Defendants do not plead that Pontius breached the duty of loyalty merely by receiving the Privileged Email. Rather, Defendants' counter-claim sufficiently pleads that Pontius breached the duty of loyalty she owed [defendants] by . . . improperly colluding with McAvoy . . . , including her disloyal use of the information in the Privileged Email *to improperly engineer a good reason resignation*." (emphasis added)). The Court's recitation of the facts relating to the disclosure thus did not overlook or omit any facts of consequence.[2]

---

[2] Defendants also suggested in their counterclaims that Pontius's *retention* of the privileged email after leaving the Onion was in "bad faith." Counterclaims ¶ 44. But courts have rejected that the retention of confidential employer materials violates the duty of loyalty. *See Leary v. Al-Mubaraki*, No. 18 Civ. 48 (LTS), 2019 WL 4805849, at *3–4 (S.D.N.Y. Sept. 30, 2019). Nor do

9

Last, the Court did not overlook that defendants dispute whether Pontius established good reason for her resignation. Nor did it "conclude[] that Defendants took no issue with Plaintiff's allegations of diminishment." Def. Mem. at 17. Rather, it noted only that the "*counterclaims* do not dispute the validity of" the grievances Pontius identified in her June 3, 2019 email. May 21 Op. at 10. And that is true: the counterclaims did not plead facts contradicting Pontius's claims, and defendants have not argued otherwise. Nor did the Court base its decision on this omission from the counterclaims. It merely noted that defendants had not provided a factual contradiction of the specific facts set forth in Pontius's email to McAvoy, which facts defendants cited in their counterclaims. Defendants thus have not identified any matter that the Court overlooked—let alone "controlling" data that requires a different outcome here.

The Court also rejects that defendants' purported new evidence provides a basis for reconsideration. On this front, defendants point to the following: (1) McAvoy's May 2021 deposition testimony; (2) the July 17, 2019 emails from McAvoy to Pontius forwarding company communications; and (3) the fact that Pontius and McAvoy communicated via their private email addresses, rather than company accounts, in June 2019. Def. Mem. at 7–14. Defendants also attach exhibits showing emails and letters that were not mentioned in their counterclaims, but do not specifically identify these exhibits as "new evidence."[3]

---

defendants explain how disclosure of the allegedly privileged email 14 months after the end of Pontius's employment could have "permeated [her] service in its most material and substantial part," as is required under the faithless-servant doctrine. *Id.* at *4 (citation omitted). If defendants still seek to pursue other relief regarding Pontius's alleged improper disclosure of privileged materials, they remain free to do so. *See* Dkt. 27 (denying motion to strike without prejudice); *see also infra*.

[3] Rightly so, given that these exhibits (*i.e.*, Exhibits C–J and I to the Mellk Declaration), bear defense Bates stamps and are internal company emails from 2019, suggesting that they were available to defendants when they filed their counterclaims. *See, e.g.*, *Bishop v. County of*

Defendants first point to McAvoy's deposition testimony—undisputedly unavailable when they filed their counterclaims—to confirm that he shared information about Mueller's departure with Pontius before she gave notice of a material diminution of her responsibilities. *See* Def. Mem. at 8–9.  But the Court expressly credited the allegation that McAvoy had done so when it granted Pontius's motion to dismiss.  *See* May 21 Op. at 4 ("Defendants allege, upon information and belief, that then-President and CEO of the Onion, Michael McAvoy, sent confidential information about [Mueller's] departure to Pontius 'so she could use that information to try to negotiate her own departure from her employment on lucrative terms.'" (quoting Counterclaims ¶ 27)); *id.* at 10 ("McAvoy sent Pontius certain confidential information," after which Pontius "notified him that she believed she had good reason to resign from her position . . . .").  And even though the Court held that such factual allegations did not plausibly support defendants' claim of a "conspiracy," it went further and held that, "even had defendants buttressed these conclusions with plausible factual support, they would not state a claim for breach of Pontius's duty of loyalty." *Id.* at 12.  Thus, the factual elaboration that McAvoy shared information about the Mueller departure with Pontius before she gave notice of a material diminution cannot "reasonably be expected to alter the conclusion reached by the Court."  *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).[4]

---

*Suffolk*, No. 13 Civ. 446 (JS) (AKT), 2015 WL 5719802, at *3 (E.D.N.Y. Sept. 29, 2015) (evidence not "new . . . for purposes of the instant motion for reconsideration" because plaintiff "was in possession of these documents" before he made the motion that was the subject of reconsideration, even though "was not aware of these documents at the time he made his motion").

[4] In any event, the very deposition testimony that defendants rely on at best provides equivocal support for their position: in his deposition, McAvoy testified that Pontius had access to information about Mueller's departure not because he illicitly shared it with her, but because her job, as Chief of Staff, required that she "handle[] all the personnel issues," and that she "was aware" of Mueller's situation "because that was her role, and I told her."  McAvoy Tr. at 109, 112.

11

Similarly, defendants' reliance on McAvoy's July 13, 2019 forwarding of emails to Pontius does not justify reconsideration. Def. Mem. at 13. The Court, in dismissing defendants' counterclaims, credited the allegations that McAvoy "sent confidential information about [Mueller's] departure to Pontius" and "improperly forwarded" his June 17, 2019 exchange with Oberlander to Pontius. May 21 Op. at 4–5. It also squarely addressed defendants' charge that Pontius had a duty to report the receipt of these emails to them. *See id.* at 11–12. Nothing about these exhibits thus alters the Court's prior conclusion as to the viability of defendants' counterclaims.

Defendants also cite the fact that McAvoy and Pontius communicated via personal email accounts in June 2019 as new evidence supporting reconsideration. *See* Def. Mem. at 10–11. That fact, which Pontius did not address in her opposition, does support that the two, in fact, strategized as to how Pontius might resign for good reason from G/O Media and the Onion. As the Court held, however, "even had defendants buttressed . . . with plausible factual support" their claims that Pontius and McAvoy colluded and that "Pontius baselessly . . . sought to trigger the good-reason provision of her employment contract," such was insufficient to state a claim for breach of the duty of loyalty. May 21 Op. at 10–12. As discussed below, defendants have not offered a basis for the Court to reverse its holding as to the contours of New York's faithless-servant doctrine or the duty of loyalty.

Nor do any of the emails between McAvoy and Spanfeller show that Pontius breached any duties to defendants. First, it is unclear that this is "new" evidence, given that these emails appear to have been in defendants' possession before this action commenced. *See, e.g.*, *Bishop*, 2015 WL 5719802, at *3; *Goonan*, 2013 WL 1386933, at *2. Moreover, whether *McAvoy* failed to follow directives from Spanfeller may or may not support that *he* breached his duties to

defendants. *But cf. Cerciello v. Admiral Ins. Brokerage Corp.*, 90 A.D.3d 967, 968 (2d Dep't 2011) ("[T]he mere failure of an employee to perform assigned tasks does not give rise to a cause of action alleging breach of [the duty of loyalty]. Rather, the employee's misuse of the employer's resources to compete with the employer is generally required."). But such failure says little to nothing about Pontius's duties, or any breach thereof. Accordingly, defendants have failed to introduce any new evidence that salvages their claims or warrants reconsideration of the Court's decision.

Third, defendants argue that, in dismissing defendants' claim for breach of the duty of loyalty, "the Court has artificially limited the circumstances in which a claim may be brought," and based its decision on an "incorrect" interpretation of the law. Def. Mem. at 22. But the limits the Court imposed are not artificial—they were based on the consistent holdings of myriad courts applying New York law to claims like those brought by defendants. "The duty of loyalty has been limited to cases where the employee, acting as the agent of the employer, unfairly competes with his employer, diverts business opportunities to himself or others to the financial detriment of the employer, or accepts improper kickbacks." *Farricker v. Penson Dev., Inc.*, No. 07 Civ. 11191 (DAB), 2010 WL 845983, at *2 (S.D.N.Y. Mar. 4, 2010) (citation omitted). A claim for breach of that duty "is available only where the employee has acted directly against the employer's interests—as in embezzlement, improperly competing with the current employer, or usurping business opportunities." *Veritas Cap. Mgmt. v. Campbell*, 82 A.D.3d 529, 530 (1st Dep't 2011); *see Cerciello*, 90 A.D.3d at 968 ("[T]he employee's misuse of the employer's resources to compete with the employer is generally required."); *see also* May 21 Op. at 12–13 (collecting cases describing types of "blatant self-dealing" that suffices to state a claim under this doctrine).

Far from offering any "controlling decisions" that contradict these cases, *see Analytical Survs., Inc.*, 684 F.3d at 52, defendants cite only a single decision by a court in this District on this point. *See* Def. Mem. at 23 (citing *Herrera v. Clipper Grp., L.P.*, No. 97 Civ. 560 (SAS), 1998 WL 229499, at *5 (S.D.N.Y. May 6, 1998)). And that decision is largely inapposite. It did not address a claim for breach of the duty of loyalty; instead, it imposed discovery sanctions on a plaintiff who "secretly cop[ied] thousands of pages of documents belonging to defendants, at least some of which were clearly confidential," in an "improper[] attempt[] to evade this court's discovery rules"; lied to her supervisor about her behavior; falsely responded to defendants' discovery requests; *and* disclosed confidential information on the docket. *Herrera*, 1998 WL 229499, at *5. Even there, the court declined to preclude the plaintiff from using the stolen materials in the case, or from imposing any sanctions aside from awarding defendants the cost of bringing their motion. *Id.* at *5. Although the court stated in *dicta* that plaintiff's actions likely also breached plaintiff's fiduciary duties, *id.* at *2 & n.2, 4, those actions bear little relation to the claims at issue here: that Pontius improperly received two emails from her former boss and used one of them in her complaint, and that she, without a basis for doing so, sought to exercise a right under her employment contract to severance payment. "Those alleged wrongs" remain "far afield of those that courts have held make an employee a faithless servant." May 21 Op. at 12; *see Grika v. McGraw*, No. 650459/2016, 2016 WL 8716417, at *15 (N.Y. Sup. Ct. 2016) (dismissing faithless-servant claim where the complaint "contain[ed] no allegations that defendant employees acted against the Company's interest, such as competing with [it] while still an employee, using company resources for non-business purposes, taking bribes from issuers to give higher ratings or diverting corporate opportunities"), *aff'd*, 161 A.D.3d 450 (1st Dep't 2018). The Court thus denies defendants' motion for reconsideration on this ground as well.

14

Last, defendants argue that the Court improperly dismissed their claim for breach of contract. They mostly base that argument on the notion that defendants pled, but the Court ignored, a theory that Pontius breached her employment agreement by "making a conscious effort to impede G/O Media's efforts to cure any purported diminution of duties." Def. Mem. at 16. That theory, however, is absent from the counterclaims. As the Court held, "[t]o plausibly allege a breach, a party must identify 'the specific provisions of the contract upon which liability is predicated.'" May 21 Op. at 15 (quoting *Benihana of Tokyo, LLC v. Angelo, Gordon & Co.*, 259 F. Supp. 3d 16, 33 (S.D.N.Y. 2017)). While defendants alleged that Pontius "made a conscious effort to impede G/O Media's efforts to cure any purported diminution of duties," Counterclaims ¶ 33, they did not in any way tie that sparse allegation to any claim for breach of any specific contract term. They *did* tie it to their claim for breach of the duty of loyalty. *See id.* ¶ 52(a).[5] But in setting forth their claim for breach of contract, they did not identify section 2(a)(5), which they now contend obliged Pontius to work with them to cure any alleged material diminution to her responsibilities; instead, they conclusorily alleged that Pontius "breached Paragraph 4 of her Agreement" by breaching "her fiduciary duties, her duty of loyalty and candor, her obligation to faithfully and diligently perform the services assigned to her, and to comply with orders and directions from the company." *Id.* ¶ 47. Whatever its merits, *see infra*, defendants' novel argument that Pontius owed them an implied duty to assist in curing the diminution of her own responsibilities was not fairly inferable, even construing the counterclaims liberally, from the counterclaims as pled. Accordingly, the Court also denies defendants' motion for reconsideration on this ground.

---

[5] As noted above, the Court considered this allegation in connection with that claim in its May 21 Opinion.

Defendants also briefly argue that the Court improperly dismissed their breach of contract claim insofar as it related to Pontius's allegedly baseless claim of good reason for her resignation. Def. Mem. at 19. But largely for the reasons given above, none of defendants' arguments support reconsideration of the Court's prior holding. The Court's prior decision did not overlook factual material, and defendants' new evidence does little more than confirm facts that the Court already assumed to be true in resolving the motion to dismiss. *See supra*. Accordingly, the Court denies, in full, defendants' motion for reconsideration.

### B. Leave to Amend

Defendants, in the alternative, seek leave to amend their counterclaims to include the new factual allegations identified in their motion. *See* Def. Mem. at 23–24. That request is granted in part and denied in part.

Rule 15(a) provides that a court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound discretion of the district court to grant or deny leave to amend" under Rule 15. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). "A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Id.* (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Relevant here, "[a]n amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). Thus, "[a]s when considering a motion under Rule 12(b)(6), a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Cano v. DPNY, Inc.*, 287 F.R.D. 251, 256 (S.D.N.Y. 2012). A court may also properly deny leave to amend under Rule 15(a) upon a showing of undue prejudice or bad faith; "[a]mendment may be prejudicial when, among other things, it would 'require the opponent to expend significant additional resources to conduct

discovery and prepare for trial' or 'significantly delay the resolution of the dispute.'" *AEP Energy Servs. Gas Holding Corp. v. Bank of Am., N.A.*, 626 F.3d 699, 725–26 (2d Cir. 2010) (quoting *State Tchrs. Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)).

As to their faithless-servant claim, defendants' request for leave to amend is denied. As discussed, the Court has already held that "even had defendants buttressed [their] conclusions with plausible factual support, they would not state a claim for breach of Pontius's duty of loyalty."[6] May 21 Op. at 12. As mentioned, although Rule 15 provides that a court "should freely give leave [to amend] when justice so requires," it is "within the sound discretion of the district court to grant or deny leave to amend" where a pleading a claim would be futile—*i.e.*, where "the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *McCarthy*, 482 F.3d at 200; *Lucente*, 310 F.3d at 258. Here, the Court has explained why the facts as alleged, even amplified by defendants' more recent filings, are simply outside the ambit of conduct addressed by New York's doctrines of faithless servant and the duty of loyalty. Defendants have not presented any case law coming close to holding that an employee's attempt to invoke a contractual right (or the use of confidential information in doing so, even in "collusion" with another employee) can plausibly be construed as "self-dealing" at an employer's expense. Even with defendants' proposed amendments, and drawing all inferences in their favor, any amendment of this claim would be futile. Thus, the Court denies leave to replead defendants' claim for breach of the duty of loyalty.

---

[6] As to defendants' claim for breach of the duty of care, defendants do not dispute the Court's prior holding that the "factual allegations in support of both claims," *i.e.*, the claim for breach of the duty of loyalty and breach of the duty of care, "are coterminous, and both rest on the charge of disloyalty." May 21 Op. at 14; *see* Def. Mem. at 22 n.11. Thus, the Court need not revisit its conclusion that both claims for breach of Pontius's fiduciary duties should be dismissed. Leave to amend is similarly denied as to each.

As to defendants' claim for breach of contract, however, the Court grants leave to amend. The Court had not, until the present motion, understood defendants to argue that Pontius breached her employment agreement by resisting their efforts to cure; nor had defendants pled facts in support of that theory. That claim, unlike defendants' prior breach of contract claim, does not depend on the same rejected allegation that Pontius acted disloyally and in breach of her contract by invoking the term of her contract allowing her to resign for good reason. To be sure, that agreement, as Pontius notes, does not contain an express provision obliging her to cooperate with defendants' efforts to cure any diminution of her duties. *See* Pl. Mem. at 13–14. And the Court agrees that the agreement is not "ambiguous" on this point, as defendants contend. *See id.* However, the contract did require Pontius to "faithfully and diligently" perform her work. Emp. Agr. ¶ 5. And "[u]nder New York law, a duty of good faith and fair dealing is implied in every contract." *Nat'l Mkt. Share, Inc. v. Sterling Nat. Bank*, 392 F.3d 520, 525 (2d Cir. 2004); *see id.* ("In New York, breach of the implied duty of good faith and fair dealing is merely a breach of the underlying contract." (citation omitted)). The covenant contains an "implicit understanding that neither party will intentionally do anything to prevent the other party from carrying out his part of the agreement." *Lowell v. Twin Disc, Inc.*, 527 F.2d 767, 770 (2d Cir. 1975). Although Pontius argues that she, in fact, worked in good faith to negotiate with defendants as to her resignation, *see* Pl. Mem. at 15–16, it is not clear from the parties' filings that, on the pleadings, defendants' claim would be futile. Rather, such questions seem fact-laden, and better resolved at summary judgment than on a motion to dismiss under Rule 12(b)(6). Nor would this amendment cause Pontius undue prejudice or delay the litigation; as defendants note, the scope of discovery on defendants' breach of contract claim—which is largely a mirror image of Pontius's breach of contract claim—will not significantly alter the scope of discovery here.

18

Further, Pontius's employment agreement obliged her not to disclose or use any "confidential information" which she came to possess, and required her to "promptly deliver" to defendants any such information upon the termination of the agreement. Std. Terms ¶ 4(a). Although defendants did not specifically identify this term in their counterclaims, Pontius's retention of any confidential information after her departure from the Onion, and use and disclosure of such information in this lawsuit, may have breached it. As such, the Court also grants defendants leave to file an amended counterclaim setting forth this additional ground for an alleged breach of contract.

Last, the Court grants defendants leave to amend their complaint to include the claim, discussed above, that Pontius breached a fiduciary duty to defendants—though not under the faithless-servant doctrine, *see supra* note 2—by disclosing, without defendants' permission, confidential and privileged information in this action. Such a claim appears to have support in the case law. *See, e.g.*, *Napoli v. N.Y. Post*, 175 A.D.3d 433, 435 (2019); *Country Club Partners, LLC v. Goldman*, No. 2370-09, 2009 WL 8629062, at *5 (N.Y. Sup. Ct. Oct. 21, 2009), *aff'd*, 79 A.D.3d 1389 (2010) ("[T]he duty of a fiduciary not to use confidential information acquired from its principal extends beyond the termination of the relationship[.]"); *see also United States v. Martoma*, 894 F.3d 64, 73 (2d Cir. 2017) ("A firm's confidential information belongs to the firm itself, and an insider entrusted with it has a fiduciary duty to use it only for firm purposes."); *Wechsler v. Squadron, Ellenoff, Plesent & Sheinfeld, LLP*, 994 F. Supp. 202, 204 (S.D.N.Y. 1998) (whistle-blower who discloses privileged information could be sued "for breach of fiduciary duty if such disclosure were not in the company's best interest"). Thus, although such disclosure, without more, does not support a claim for breach of the duty of loyalty under the faithless-servant doctrine for the reasons discussed, it appears sufficient to state a claim for breach of fiduciary duty under New York law.

The Court thus grants defendants leave to file an amended counterclaim for breach of the parties' employment agreement, on the grounds that Pontius (1) did not in good faith, "faithfully[,] and diligently" work with defendants to cure the material diminution in her role that she claimed; and (2) improperly maintained and disclosed defendants' confidential information. The Court further grants defendants leave to file an amended counterclaim for breach of fiduciary duty on the latter ground, *i.e.*, that she improperly maintained and disclosed confidential and allegedly privileged communications belonging to the defendants after her employment for them ended. In all other respects, the Court denies defendants' motion for leave to amend.

## CONCLUSION

For the foregoing reasons, the Court grants defendants' motion for leave to file an amended counterclaim, consistent with the ruling above, for breach of contract and breach of fiduciary duty. In all other respects, defendants' motion is denied.

Defendants are directed to file any amended counterclaims, consistent with this opinion and the Court's May 21 Opinion, by July 14, 2021.

The Clerk of Court is respected to terminate the motion pending at docket 51.

SO ORDERED.

                                             PAUL A. ENGELMAYER
                                             United States District Judge

Dated: July 7, 2021
          New York, New York